JOSEPH LANDIS and another *v.* E. C. DARLING and another.

A party having purchased of plaintiffs a quantity of flour for cash, to be shipped on a vessel bound to a foreign port, it was delivered on board and receipts taken for it in the name of the plaintiffs. The purchaser never.paid for the flour ; but obtained from the master of the vessel, to whom he consigned it, bills of lading therefor without having produced the receipts given to the vendor, and an advance to be repaid with commissions and freight. In an action by plaintiffs against the master to recover the flour, *Held :* that it is an established usage, where goods are purchased for cash to be shipped for exportation, for the vendor to take the receipts of the officers of the vessel in his own name, to be delivered to the purchaser when the price is paid, that the latter may obtain a bill of lading from the master on their production ; that the possession of the flour never ceased to be in the plaintiffs ; and that the master acted in his own wrong in giving a bill of lading to the purchaser, and in making advances before delivery to the latter had been effected by the surrender of the dray receipts to him.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

*Benjamin,* for the plaintiffs. No counsel appeared for the appellant.

MORPHY, J. The petition alleges that on the 1st of April, 1839, the plaintiffs sold to one Darling, two hundred barrels of flour, at six dollars and three-fourths per barrel. That the sale was made for cash, and that the plaintiffs were requested by the purchaser to ship said flour on the brig Apalachicola, Latham, master, bound for Havana. That being unwilling to deliver the flour without being paid therefor, the plaintiffs sent it on board of said brig, but took receipts for it in their own name, and paid twelve dollars and fifty cents for drayage in sending it on board the brig. The petition further represents that since then the plaintiffs have been unable to find the said Darling, or to obtain from him the price of the flour and the expenses of drayage, and that the said Latham, the master of the vessel, refuses to deliver back to them the said flour which they are entitled by law to reclaim in kind, the same not having been paid for. The petition concludes with a prayer for the sequestration of the flour, and for a judgment decreeing the said Darling and Latham to restore the flour to the plaintiffs, or to pay the value thereof. The defendant, Latham, answered, averring that on or about the 1st of April he, as master of the brig Apalachicola, entered into a contract of

Landis and another v. Darling and another.

affreightment with a person named E. C. Darling to carry to the Havana two hundred barrels of flour. That the flour was sent on board of his brig by said Darling, and consigned to him in consideration of his having advanced on account thereof $900, which was to be paid to him with five per cent commission for advance, and seventy-five cents per barrel for freight, for all which he has a privilege and lien on the flour. The shipper having delivered and consigned it to him, and having received from him bills of lading for the same, previous to any claim from the vendors of the flour, whose rights, if any they have, were entirely unknown to him. The answer prays for judgment against Darling and plaintiffs for the sum of $1375, with privilege on the flour; and for the further sum of one thousand dollars, damages against the plaintiffs, for having illegally sequestered and detained his brig for four or five days after she was prepared to sail for her port of destination. There was a judgment below in favor of the plaintiffs for $1200, with privilege on the flour sequestered.* Latham has appealed.

The evidence shows the well established commercial usage to be, that when goods are purchased for cash, with the request that they be sent on board of a vessel for exportation, the merchant takes, in his own name, the receipts of the officers of the vessel, and when the purchaser comes and pays for the goods, the receipts are handed over to him. The reason given for this usage is, that the seller may retain possession of his goods until they are paid for. Several witnesses testify that the master of a ship never signs a bill of lading until these receipts are produced and returned to him; and that their strictness in this respect is such, that when any dray receipts are missing, some captains require an indemnity bond against such receipts before signing the bills of lading. The sale in this case was a cash one, and Darling never paid for the flour, nor called for the receipts, which were all taken in the name of the plaintiffs. Before the flour was sequestered, the captain acknowledged that he had received it from the plaintiffs, and even offered,

---

* Plaintiffs claimed two hundred barrels at $6 75. MAURIAN, J. "The plaintiffs having delivered the flour on Latham's vessel, are bound, on taking it back, to pay the freight, which is proved to have been seventy-five cents a barrel, or $150, which deducted from $1350, leaves a balance of $1200 due to the plaintiffs."

at one time, to sign the bill of lading for them, but afterwards refused to do so when called upon. The court correctly decided, we think, that the possession of the flour had never ceased to be in the plaintiffs, and that the master acted incautiously and in his own wrong, when he gave a bill of lading for the flour to Darling, and made advances on it before the delivery to him was effected by the surrender of the dray receipts.

<div align="right">

*Judgment affirmed.*